UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTHONY M. KING,

Plaintiff,

v.

ALEJANDRO TELLEZ, et al.,

Defendants.

Case No. 24-cv-05175-NW

**ORDER PARTIALLY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: ECF No. 24

Plaintiff Anthony M. King, a pro se state prisoner, filed this civil rights lawsuit alleging that Correctional Officer Alejandro Tellez and Senior Hearing Officer S. Moore, both of whom worked at Correctional Training Facility ("CTF"), retaliated against him and violated his due process rights. *See generally* ECF No. 1. Defendants filed a motion for summary judgment, and the motion is now fully briefed. ECF Nos. 24, 27, 33. For the reasons discussed below, the motion for summary judgment is **PARTIALLY GRANTED**.

I.    **BACKGROUND**

    A.    **Complaint**

King alleges in his Complaint that Tellez retaliated against him by issuing false rules violation reports ("RVRs"), and that Moore violated his due process rights during the disciplinary hearing for one of the RVRs at issue.[1]

King contends Tellez began expressing bias and harassing him shortly after he and other prisoners filed a November 2021 class action lawsuit alleging that several correctional officers at CTF engaged in racism and violence toward African American prisoners. In 2022 and 2023, King

---

[1] Unless otherwise noted, all facts in this section are taken from the Complaint, ECF No. 1.

served as a member of the "C-Wing Elected Men's Advisory Council," which "advised and communicate[d] with C-Wing correctional staff [regarding] matters of common interest and concern to the inmate population in C-Wing." *Id.* at 5. During that time, King raised several complaints from African American prisoners to Tellez regarding alleged harassment, disrespect, cell searches, false RVRs, and mental health referrals. Tellez warned King to "mind [his] own business," and King explained that raising shared prisoner complaints was part of his role in the Men's Advisory Council. *Id*. (citation modified).

On December 22, 2023, King was walking in C-Wing when Tellez allegedly made derogatory race-based epithets when telling King and other African American prisoners that, "we're going to send all you [racial slur omitted] who filed that lawsuit against us [to the Maximum Security Housing Unit ("SHU")]." ECF No. 1 at 5. Tellez allegedly followed King and began "aggressively" telling King to "cuff up." *Id*. at 5–6. On December 26, 2022, Tellez filed RVR Log No. 7254672 containing the "false" accusation of battery on a peace officer. Tellez stated in the RVR that King had yelled at him regarding a mental health referral, refused to be handcuffed, and "bump[ed] into [Tellez's] left chest area with his right shoulder and torso" as he tried to run from Tellez. *Id*. at 7. On January 24, 2023, King was found guilty of a lesser included charge by Senior Hearing Officer Lieutenant J. Reed[2] and assessed 61 days of credit loss.

On February 7, 2023, King was reporting for his work assignment in the dining hall with two other prisoners when he saw Tellez standing on the other side of the dining room table. Tellez allegedly called King a racial slur, said that he was writing "another 115 (meaning 'RVR')," and told King to expect similar incidents "[u]ntil [King] changed [his] story" about "July 20th."[3] ECF No. 1 at 7. On February 17, 2023, King received RVR No. 7270246 for disrespect with potential for violence or disruption. RVR No. 7270246 stated that King told Tellez that he (Tellez) was "a bitch," and walked around the dining room telling other prisoners that Tellez was "harassing" him,

---

[2] Reed is not a party to this lawsuit.

[3] The Complaint does not explain the significance of the date, but other filings indicate that King had filed a lawsuit against several CTF correctional officers related to a July 20, 2020 incident. *See* ECF No. 29 at 3.

which Tellez found "disrespectful." *Id.* at 8.  King states that he asked another correctional officer in the area, Alvarez, whether he heard King call Tellez a "bitch," and Alvarez reportedly stated that he did not. *Id.*

Moore was assigned as the Senior Hearing Officer for the March 3, 2023 hearing regarding RVR No. 7270246.  Moore refused King's request to call Alvarez as a witness and refused to consider "documentary evidence in defense to mitigate the charge." ECF No. 1 at 9.  For example, Moore did not allow King to present the results of the disciplinary hearing for RVR No. 7254672.  King also states that his proposed documentary evidence would have shown that Tellez wrote King's "false" RVR because King had filed a lawsuit against Tellez and other officers. *Id.*  Moore allegedly told King:  "I don't need to see [the disciplinary hearing results,] I am aware of you battering my officer—you should be in the SHU!"[4]  *Id.*  Moore found King guilty of the charges and assessed several penalties, including a 30-day loss of credits.

King alleges that Tellez was aware that serious RVRs would impact his chances of being released on parole.  King also alleges that Tellez previously said that he (Tellez) could assault a prisoner and then file charges against that prisoner.  King also alleges that Tellez wrote a "false mental health referral chrono" requesting that King be evaluated by mental health services on an unspecified date.  ECF No. 1 at 5.

### B.  Summary Judgment Evidence

Each party submitted evidence in support of its respective summary judgment position. *See* ECF Nos. 23, 29, 30, 33.  The evidence is briefly summarized below.

#### 1.  Tellez Declaration

Tellez submitted a declaration in support of his motion for summary judgment.  ECF No. 24 at 31.  Tellez states that he has been employed as a correctional officer by the California Department of Corrections and Rehabilitation ("CDCR") since 2018.  On December 15, 2022, Tellez issued a mental health referral for King after "a series of negative interactions in which he made statements that led [Tellez] to believe [King] perceived almost any action [Tellez] took as

---

[4] Per the Complaint, "[t]he 'SHU' is a Maximum Security Housing Unit for inmate[s] whose conduct endangers the safety of others[.]"  ECF No. 1 at 5.

United States District Court
Northern District of California

targeting him or the [B]lack population." *Id*. at 32. Tellez states that he issued the referral based on his training and understanding of CDCR policy, which requires officers to report if a prisoner is "engaging in any bizarre, unusual, or uncharacteristic behavior." *Id.*

On December 22, 2022, the date King allegedly battered Tellez, Tellez was reportedly unaware of any allegations or grievances made against the CTF warden by African American prisoners. Tellez denies saying racial slurs toward King or telling King that he would send any prisoner-plaintiffs to the SHU. Rather, Tellez states that the incident occurred when he was issuing latex gloves to C-Wing laundry workers at approximately 2:00 p.m., and King allegedly approached Tellez and shouted at him regarding the mental health referral. King accused Tellez of being biased and racist, and called Tellez a "fucking coward." ECF No. 24 at 33. King also stated, "[Y]ou [are] giving me a whole lot of good material now to put some paperwork in." *Id.*

Tellez ordered King to turn around for handcuffing so he could be removed from the area, but King told Tellez that he would not listen and that he wanted to speak with a Sergeant. When Tellez refused and reiterated his order to "turn around and cuff up," King put his hands up and rushed past Tellez, bumping into Tellez's left chest area. ECF No. 24 at 33. King was eventually handcuffed after more correctional staff arrived at the area, and upon hearing Tellez's description of what had happened, Sergeant Rendon instructed Tellez to document the incident as an incident of battery on a peace officer.

Regarding the February 7, 2023 incident, Tellez stated that he was guarding a corridor with another correctional officer, Alvarez, when the incident took place. As King walked by Tellez, King allegedly stated, "You're a bitch!" ECF No. 24 at 35. Tellez states that he ordered King to stop walking, but King ignored him and proceeded into the dining hall, with Tellez following behind him. Tellez told King that he was going to write him an RVR for being disrespectful. King put his hands up and walked toward a group of prisoners while stating, "Look y'all, this C.O. is harassing me, I didn't do nothing to him and he is harassing me." *Id*. The group of prisoners stepped away from King. King approached a different group of prisoners and continued shouting. Tellez informed King that he could not "go around calling people bitches," and that he was issuing King an RVR. *Id*. Tellez issued RVR No. 7270246, and alleges he did so because King violated

4

CDCR regulations, not for purposes of harassment or retaliation. He also states that disrespectful language toward staff could lead to violence and undermine staff's authority, especially because King went to multiple groups of prisoners and made accusations about Tellez. Tellez denies telling King that he would keep issuing RVRs until King changed his story about July 20th, or calling King a racial slur on that date. Tellez is not a party to any other lawsuits brought by King, and is unaware of King's other litigation activity. Tellez also alleges that he is not involved in the grievance process.

### 2.      Moore Declaration

Moore submitted a declaration in support of summary judgment. ECF No. 24 at 49. Moore has been employed by CDCR since 1996 and was promoted to Correctional Lieutenant in 2020. Within that role, Moore conducts disciplinary RVR and administrative segregation unit placement hearings, writes crime and incident reports, oversees case investigations, supervises sergeants, and reviews and implements documentation related to prison functioning. As of the writing of her declaration, Moore had presided over approximately 240 RVR hearings as a Senior Hearing Officer.

Moore was randomly assigned to preside over the March 3, 2023 disciplinary hearing for RVR No. 7270246. Moore's role was to ensure that King received due process, and to review all relevant evidence and testimony before assessing whether King's guilt was shown by a preponderance of the evidence. Moore also wrote the report documenting the disciplinary hearing for RVR No. 7270246, which included all evidence considered, statements made, whether the prisoner was found guilty or not guilty, rationale, and any discipline imposed. During the hearing, King requested two prisoners as witnesses to testify in his defense. The prisoners had been walking next to King when the February 7, 2023 incident occurred. Moore allowed King to call the prisoners during the hearing.

King also requested to call Alvarez as a witness. Moore asked King and one of the other prisoner witnesses whether Alvarez witnessed the incident, and King reportedly said that "Alvarez did not see anything." ECF No. 24 at 51. One of the prisoner witnesses also stated that he did not know whether Alvarez was present when the incident occurred. Moore therefore determined that

United States District Court
Northern District of California

Alvarez would not be able to provide additional or relevant information about the incident if called as a witness, and denied King's request in line with regulations stating that a hearing officer may deny a request for a witness if he or she "determines that the witness has no relevant or additional information." *Id.* (citation modified).

Moore states that King did not attempt to present any documentary evidence during the hearing. Moore also advised King to use the grievance process to address the claim of retaliation, and King clarified that he was already in the process of filing several grievances. Moore reviewed and evaluated the evidence and concluded that "King's specific arguments to invalidate the charge were negated by the fact that, in totality, [King] had no evidence to refute that the verbal exchange with [Tellez] . . . described in the RVR did occur, and [King's] witnesses also could not refute the report of the verbal exchange in the dining hall." *Id.* at 52. Moore was not instructed to find King guilty by any other CDCR employee, and also denies accusing King of "battering [his] officer" or saying that King "should be in the SHU[.]" *Id.* (citation modified). At the end of the hearing, Moore notified King about her finding of guilt, the sanctions imposed, and King's right to appeal.

CDCR regulations require prisoners to "refrain from behavior which might lead to violence or disorder[,]" and state that prisoners must not "openly display disrespect or contempt for others in any manner intended to or reasonably likely to disrupt orderly operations within the institutions or to incite or provoke violence." ECF No.24 at 54 (citation modified); Cal. Code of Regs., tit. 15 §§ 3005(a), 3004(b). Moore asserted it is essential to follow these regulations, and that any disrespectful language or actions toward staff can lead to violence, especially when other prisoners are around and staff are outnumbered.

### 3. King Deposition

Defense counsel V. Zhang submitted excerpts of King's June 18, 2025 deposition in support of summary judgment. ECF No. 24 at 153–71. During the deposition, King testified that he was enrolled in the "Triple CMS" mental health program, which allowed King to meet with a therapist. *Id.* at 157. King alleged that Tellez used a mental health referral as a "weapon" against King. *Id.* During the December 2022 incident, Tellez allegedly smirked at him and said "mental health, huh," as King walked by with several other prisoners. *Id.* at 161. King told Tellez that he

was "giving [King] the power of the pen . . . giving [King] things to write up." *Id.* King denied telling Tellez that he was refusing to "cuff up," but admitted that he raised his hands up and requested a sergeant. *Id.* King alleged that Tellez activated his personal alarm despite he and King never being near each other during the incident, and denied bumping into Tellez.

Regarding the February 2023 incident, King testified that he was sitting at a table when Tellez walked in and began to call King racial slurs and saying that King "think[s] [he is] special." ECF No. 24 at 165. King had not seen Tellez until he was in the dining room. When King asked Tellez what he was talking about, Tellez told King that he could not "go around here calling people bitches," and that King was getting an RVR. *Id.* King raised his hands up to the air and started yelling across the dining area that Tellez was following him and targeting him. King explained that he was calling attention to himself because he did not want to be accused of hitting Tellez again. King denied calling Tellez a "bitch."

A few days after King received the RVR for the February 2023 incident, he saw Alvarez, who was listed as working in the same area as Tellez at the time of the incident. ECF No. 24 at 168. King asked Alvarez if he had ever seen or heard King disrespect staff, and Alvarez responded that he had not. King conceded that it was likely that "Alvarez did not witness what happened between [King] and Defendant Tellez on February 7th, 2023." *Id.* at 169. King also noted during his deposition that Moore allowed two prisoner witnesses to testify in his defense during the disciplinary hearing, but denied King's request to call Alvarez as a witness. Moore similarly declined to look at King's past RVRs during the hearing, stating that she was "not [t]here to talk about past RVRs or what happened in th[ose] RVR[s]." *Id.* at 171.

#### 4.    King Declaration

King submitted a declaration in opposition to summary judgment. *See* ECF No. 29. In his declaration, King reiterates his allegation that he was elected as the C-Wing representative to the Men's Advisory Council in 2022 and 2023, and that he met with Tellez several times to discuss complaints from African American prisoners regarding alleged retaliation, illegal cell searches, disrespectful name-calling, and issues with supplies. King states that he was not hostile or aggressive toward Tellez at the time Tellez referred him for mental health evaluation, and that the

United States District Court
Northern District of California

referral was a form of harassment.

King states that Tellez made multiple attempts to talk to King about a lawsuit regarding a July 20, 2020 lawsuit King filed against Tellez's coworkers. On December 15, 2022, King and Tellez spoke about the lawsuit; during the conversation, Tellez allegedly said, "I can assault an inmate and file[] charges against the inmate." ECF No. 29 at 3 (citation modified). King does not provide further details about the rest of the conversation.

King also reiterates the allegations in his Complaint regarding the December 22, 2023 incident in C-Wing, including that Tellez said racial slurs toward King prior to the incident. After King was placed in the Administrative Segregation Unit following the December 22, 2023 incident, King allegedly expressed his concerns about Tellez to prison staff and asked to be transferred to a different prison. However, King remained at CTF.

As to the February 7, 2023 incident, King reiterates the allegations in his Complaint. King denies calling Tellez a "bitch" and alleges that Tellez directed racial slurs toward him. ECF No. 29 at 5. King states that he did not see Tellez until after he was in the dining room. King also alleges that he spoke to Alvarez, who was standing in the corridor monitoring prisoners with Tellez on the date of the incident, a week later. Alvarez allegedly told King that he did not hear King call Tellez a "bitch." *Id.* Regarding his disciplinary hearing for RVR No. 7270246, King alleges that Moore refused his request to call Alvarez as a witness in King's defense and falsely told the grievance office that King never requested Alvarez as a witness.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on any claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden shifts to the non-moving party to present

United States District Court
Northern District of California

specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In evaluating a motion for summary judgment, the Court is only concerned with disputes over material facts; "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Mere allegations or denials do not defeat a moving party's allegations. *Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994). The nonmoving party has the burden of identifying, with reasonable particularity, the "significant probative evidence" that precludes summary judgment. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (quotations omitted); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact.'"). If the nonmoving party fails to make the requisite showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322 (quotations omitted).

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). However, "[w]hen opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

King alleges that Defendants retaliated against him and denied him due process in violation of his First and Fourteenth Amendment rights. *See* ECF No. 1 at 3–8. Defendants move for summary judgment on this claim on the basis that the claims are not proper 28 U.S.C. § 1983 claims, are barred as a matter of law, or lack merit; they also argue that the claim against Moore is unexhausted due to King's untimely RVR appeal. *See generally* ECF No. 24. The Court addresses each argument below.

United States District Court
Northern District of California

### 1.    Proper Remedy/*Heck*

At the outset, Defendants argue that the retaliation claim against Tellez for RVR No. 7254672 is not cognizable under 28 U.S.C. § 1983 and should be raised in a habeas corpus petition because King essentially seeks to advance his release from custody by challenging RVR findings that led to the assessment of custody credits. *See* ECF No. 24 at 21. M. Barss, the Litigation Coordinator at CTF, submitted a declaration in support of Defendants' argument noting that King is serving a determinate sentence of 59 years, 4 months, and that any reduction in custody credits affects the length of King's confinement.[5] ECF No. 24 at 70.

King does not explicitly seek restoration of his custody credits. However, to the extent that King the facts underlying his guilty finding for that RVR, the Court agrees with Defendants that King's claim is barred by the favorable termination rule in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). *See Edwards v. Balisok*, 520 U.S. 641, 643–49 (1997). Under *Heck*, a prisoner may not bring a claim under § 1983 that necessarily implies the invalidity of a conviction or sentence until he has succeeded in invalidating the conviction or sentence by other means, such as through the grant of a writ of habeas corpus. *See* 512 U.S. at 486–87. *Heck* also applies to § 1983 claims arising from prison disciplinary proceedings that resulted in a sanction that affects a prisoner's term of confinement, such as the loss of good time credits. *See Edwards*, 520 U.S. at 648. A prisoner's challenge to a prison disciplinary proceeding is barred by *Heck* if judgment in his favor would necessarily imply the invalidity of the resulting loss of good time credits. *Id.* at 646. "[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *see Edwards*, 520 U.S. at 643–49 (holding that plaintiff's claim for declaratory relief and money damages against a prison official was barred by *Heck* because the plaintiff's "allegations of deceit and bias on the part of the decisionmaker . . . necessarily impl[ied] the

---

[5] Barss also notes that the custody credits assessed as part of RVR No. 7240246 were restored.

invalidity of the punishment imposed[.]").

Here, King was assessed 30 days of custody credits after he was found guilty of RVR No. 7254672. If King prevails on his claim that the RVR was fabricated and issued for a retaliatory or improper purpose, it will necessarily imply that the hearing officer's findings and resulting punishment of loss of 30 days of good time credit are invalid. The rationales of *Heck* and *Edwards* therefore bar King's retaliation claim related to RVR No. 7254672. *Accord Weisner v. Salinas*, No. 22-cv-05382-CRB, 2024 WL 695668, *3 (N.D. Cal. Feb. 20, 2024); *Burgess v. Raya*, 690 F. App'x 483, 484 (9th Cir. 2017) (retaliation claim against correctional officers barred by *Heck* because success would imply invalidity of disciplinary proceedings); *Cole v. Spears*, No. 22-cv-5925-MEMF-JPR, 2023 WL 5506003, at *3–4 (C.D. Cal. Jul. 12, 2023) (unless plaintiff can show disciplinary decision has been invalidated, claim that RVR was issued for retaliatory or improper purpose barred by *Heck* because plaintiff prevailing would imply hearing officer's findings and imposed punishment are invalid); *Blair v. Herrera-Salazar*, No. 19-cv-1261-DMS-KSC, 2021 WL 8013610, at *5 (S.D. Cal. Sept. 27, 2021) (retaliation claim barred by *Heck* because plaintiff prevailing would invalidate RVR, disciplinary hearing and loss of good time credits), *accepted by* 2022 WL 1047515 (S.D. Cal. Apr. 7, 2022); *see also Luster v. Amezcua*, No. 16-cv-0554-LJO-GSA, 2019 WL 1442992, at *8 (E. D. Cal. Apr. 1, 2019) (retaliation claim barred by *Heck* because plaintiff's theory depended on finding that charges against her were false, which would necessarily imply invalidity of punishment imposed).

Based on the foregoing, the retaliation claim against Tellez related to RVR No. 7254672 is **DISMISSED WITHOUT PREJUDICE** to King challenging the RVR through habeas corpus in the appropriate venue, and without prejudice to King renewing his claims once he can show that the underlying RVR has been invalidated.

### B.    Exhaustion

Defendants also argue that the due process claim against Moore is barred because King failed to properly exhaust administrative remedies prior to filing this lawsuit. ECF No. 24 at 15.

#### 1.    Legal Standard

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to

United States District Court
Northern District of California

11

provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and is no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91 (footnote omitted).

Nonexhaustion under § 1997e(a) is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 211 (2007). Defendants have the burden of raising and proving the absence of exhaustion, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints. *Id.* at 215–17. A defendant who raises the issue of nonexhaustion in a motion for summary judgment under Rule 56 of the Rules of Civil Procedure must produce evidence demonstrating failure to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) (en banc). If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1166. If material facts are disputed, summary judgment should be denied, and the issue must be determined by a factfinder. *Id.*

### 2.    Administrative Remedies

California state prisoners have the right to administratively grieve and appeal any "policy, decision, action condition, or omission by [CDCR] or departmental staff that causes some measurable harm to their health, safety, or welfare." Cal. Code Regs. tit. 15, § 3481(a). Under the regulations effective June 1, 2020, there are two levels of review for non-healthcare appeals by prisoners, referred to as "grievance[s]" and an "appeal[s]." *Id.*; Cal. Code Regs. tit. 15, § 3484(a). At the first level, the prisoner submits a form CDCR 602-1 to the Institutional Office of Grievances at the prison or other facility where he is housed. *See* Cal. Code Regs. tit. 15, § 3482(a), (c). The prisoner is required to complete a CDCR Form 602-1 that "describe[d] all

12

information known and available to the claimant regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the claimant's knowledge." Cal. Code Regs. tit. 15, § 3482(c)(2). The prison's Institutional Office of Grievances is given "60 calendar days" to complete a written response to the claimant's grievance. Cal. Code Regs. tit. 15, § 3483(i).

If a prisoner is dissatisfied with the Institutional Office of Grievances' decision at the first level and wishes to challenge it, the prisoner must submit a second-level appeal. To do so, the prisoner submits a form CDCR 602-2 to CDCR's Office of Appeals ("OOA") in Sacramento. *See* Cal. Code Regs. tit. 15, §§ 3481(a), 3485(a). A prisoner is required to submit his appeal within 60 calendar days from the date he received notice of the Office of Grievances decision. Cal. Code Regs. tit. 15, § 3484(b)(1).

### 3.    Evidence Related to Exhaustion

In support of their assertion that King's claims are unexhausted, Defendants provide a declaration by Howard E. Moseley, the Associate Director of OOA, in which Moseley states that King filed five appeals related to the RVRs at issue in this lawsuit, but only one appeal was related to Moore's role in adjudicating RVR No. 7270246. *See* ECF No. 24 at 103. Specifically, in Appeal Log No. 492649, King alleged that Moore refused to allow King to call Alvarez as a witness or present evidence in his defense during the disciplinary hearing related to RVR No. 7270246. Appeal Log No. 492649 was submitted to the OOA on March 18, 2024, and rejected as untimely on April 24, 2024 because any appeal should have been filed by March 8, 2024 under CDCR's regulations. ECF No. 24 at 105; *id*. at 110–17. Moseley states in his declaration that King did not file any further appeals regarding Moore prior to filing the instant lawsuit. *Id.* at 105.

In response, King alleges in his declaration opposing summary judgment that, at the time he filed his appeal, he notified OOA that Officer T. Pasillas issued him the grievance response through regular institutional mail, which King did not receive until March 15, 2024, after the 60-day deadline. ECF No. 29 at 7. King also alleges that he contested the finding of untimeliness and received notice on June 14, 2024 that "the decision by the [OOA] conclude[d] the

13

administrative remedies process" and that "no further action [would] be taken." *Id*. at 7–8. King provides a copy of a grievance form challenging the OOA's rejection of his grievance, marked as "received" by OOA on May 7, 2024. ECF No. 29-1 at 16. He also provides a copy of a letter from the OOA stating that the OOA decision concluded the administrative process. *Id.* at 20.

### 4. Analysis

Defendants argue that King does not dispute that he filed his appeal on March 22, 2024, after the 60-day deadline, and that the OOA therefore properly denied the appeal as untimely. ECF No. 33 at 8-9. They do not, however, acknowledge King's grievance disputing the propriety of the OOA's denial of the claim as untimely or the OOA's subsequent response to King. *See generally* ECF No. 33.

As noted, King provided evidence with his first appeal notifying OOA that he received the grievance denial on March 15, 2024, after the deadline (ECF No. 29 at 7); that Officer Pasillas signed the corner of the grievance document stating "I/P King F34697 informed me, C/O T. Pasillas, that he received this via institutional mail on 3/15/24" (ECF No. 29-1 at 18); that King submitted an additional grievance to OOA calling attention to the issue after they denied his initial appeal as untimely (ECF No. 29-1 at 16); and that OOA responded to his grievance on June 14, 2024, letting him know that the OOA's decision "conclude[d] the administrative remedies process" and that no further action would be taken (*id.* at 20).

There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643 (2016). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, an administrative remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Here, viewed in the light most favorable to King, he provides sufficient evidence showing

United States District Court
Northern District of California

a triable issue of material fact as to whether he exhausted his available administrative remedies and as to whether a timely appeal was "available" to him: namely, the evidence shows that King informed the OOA that he allegedly received the grievance decision after the deadline in a document attached to his appeal but his contention was not addressed, and the OOA refused to consider King's post-denial grievance providing evidence that he did not receive the initial grievance response until after his deadline to file an appeal. *See* Cal. Code Regs. tit. 15, § 3484(b)(1) (noting that prisoners must appeal "no later than 60 calendar days after the date at the top of the decision letter issued by the Office of Grievances or the date the decision was discovered by the claimant, whichever occurs later in time"); *Ross*, 578 U.S. at 643. Defendants have not shown they are entitled to summary judgment on this ground.

### C.    Merits

Defendants also argue that the remaining claims related to RVR No. 7270246 fail on the merits.

#### 1.    Retaliation

King has one remaining claim of retaliation, related to RVR No. 7270246, against Tellez. Defendants argue that they are entitled to summary judgment for this claim because King cannot show (1) causation, and (2) that Tellez's actions did not reasonably advance a legitimate correctional goal. *See* ECF No. 24 at 25–27.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted); *accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

#### a.    Causation

To show causation, a plaintiff must show that the prison official intended to take an

15

adverse action out of "retaliatory animus" to "silence and to punish" the prisoner, as opposed to some other reason. *Shepard v. Quillen*, 840 F.3d 686, 689–91 (9th Cir. 2016). Evidence probative of retaliatory animus includes proximity in time between the protected speech and the alleged adverse action, prison official's expressed opposition to the speech, and prison official's proffered reason for the adverse action was false or pretextual. *See id.* at 690; *see also Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (non-prisoner case). Mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014).

In support of his argument that King cannot show causation, Tellez points to his declaration, in which he states that King called him a "bitch" and called attention to Tellez in front of other prisoners during the incident, thereby violating prison regulations. *See* ECF No. 24 at 23–26. Viewed in the light most favorable to King, however, the record contains sufficient conflicting evidence from which retaliatory animus can be inferred. For example, King provides evidence that he did not call Tellez a "bitch" on February 7, 2023, and alleges that Tellez's underlying rationale for the issuance of the RVR was fabricated. *See* ECF No. 24 at 165. King provides evidence that he had made multiple complaints to Tellez on behalf of himself and other prisoners prior to the incident. King provides evidence that Tellez referenced a lawsuit King filed against CTF officers during a previous interaction and demanded that King "change[] [his] story" about what had occurred, and it is undisputed that King told Tellez that he was giving King material to file more grievances less than two months prior to the incident. ECF No. 29 at 5; *see McCollum v. Cal. Dep't of Corrs. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (retaliatory intent may be inferred where the defendant "expressed opposition to the [plaintiff's] speech" or where plaintiff provides evidence of "proximity in time between protected speech and the alleged retaliation.") (citation modified).

Accordingly, King has shown that a triable issue of fact remains as to whether Tellez had retaliatory animus in issuing RVR No. 7270246. *See Shephard*, 840 F.3d at 689–91 (finding genuine issue of material fact as to whether defendant sent inmate to segregation unit with intent to follow prison regulations or retaliate for inmate's complaint about staff misconduct). Similarly, because King provides evidence that he never called Tellez a "bitch" and that the RVR was issued

16

as a result of retaliatory animus, King has shown a triable issue of fact remains as to whether Tellez would have issued RVR No. 7270246 "but for" his alleged retaliatory intent.[6] *See Bryant v. Ochoa*, 506 Fed. App'x 635, 636 (9th Cir. 2013) (reversing summary judgment where plaintiff had provided evidence of retaliatory motive and that RVR was issued under false pretenses); *Kilgore v. Clavijo*, No. 17-cv-04786-JST, 2024 WL 2818858, *23–24 (N.D. Cal. Jun. 3, 2024) (finding triable issue of fact where plaintiff provided evidence of retaliatory animus despite conflicting evidence by defense that officer was required to search a certain number of cells under prison regulations).

### b.    Legitimate Penological Goal

A prisoner alleging retaliation bears the burden of pleading and proving absence of legitimate correctional goals for the conduct of which he complains. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Once the prisoner has done so, the burden shifts to the prison official to show, by a preponderance of the evidence, that the alleged retaliatory action was narrowly tailored to serve a legitimate penological purpose. *See Schroeder v. McDonald*, 55 F.3d 454, 461–62 (9th Cir. 1995). Prison officials cannot simply articulate a general justification for their actions. *Shepard*, 840 F.3d at 692. However, retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt*, 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* (quoting *Sandin*, 515 U.S. at 482).

Here, King alleges that Tellez issued RVR No. 7270246 based on a false narrative of what occurred, and has provided sufficient evidence to create a triable issue of material fact as to whether the RVR was motivated by retaliatory animus. Although the prison undoubtedly has a

---

[6] The Court also notes that a prisoner's complaints about prison staff misconduct is considered protected conduct, and punishing a prisoner for doing so in front of other prisoners supports an allegation of retaliatory intent. *See Shepard*, 840 F.3d at 689; *see also West v. Dizon*, No. 12-cv-1293 MCE DAD, 2014 WL 794335, *5–6 (E.D. Cal. Feb. 27, 2014) (noting that verbal complaints about staff conduct are protected under First Amendment).

legitimate penological interest in ensuring that prisoners do not disrespect staff or create dangerous conditions within the prison, the Ninth Circuit has made clear that "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003). Because the issue of whether Tellez issued the RVR for a legitimate penological purpose rests on whose testimony is found credible by a factfinder, Defendants have not shown that no issue of material fact remains as to this issue.

### c.    Qualified Immunity

Defendants also argue that King's retaliation claim is barred by qualified immunity. *See* ECF No. 24 at 27.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier*, 533 U.S. at 201). "[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (citation modified). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the "specific context" of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 202. The court must take care not to define the "specific context" of the case in a manner that imports genuinely disputed facts or fails to draw inferences in favor of the non-

United States District Court
Northern District of California

movant. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

"[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." *Rhodes*, 408 F.3d at 569 (quoting *Pratt*, 65 F.3d at 806.). Moreover, *Bruce*, 351 F.3d at 1289, clearly established that a government official may not use an otherwise valid procedure as a ruse or a cover to silence and punish a prisoner. Viewing King's claim in the light most favorable to him, the Court finds that it was clearly established in February 2023 that King had a right to litigate claims against correctional officers, and to file or threaten to file a grievance against a correctional officer, without being subjected to a false grievance as a result.

Accordingly, because Defendants have not shown they are entitled to qualified immunity and issues of material fact remain as to whether Tellez retaliated against King, Defendants' motion for summary judgment is **DENIED** as to this claim.

### 2. Due Process

Defendants argue that they are entitled to summary judgment for King's due process claim against Moore in connection with her role during the disciplinary proceedings for RVR No. 7270246 because (1) King's due process interest was not implicated after his custody credits were restored, (2) Moore properly denied King's request to call Alvarez as a witness, and (3) Moore properly denied King's request to introduce evidence of his past RVR. *See* ECF No. 24 at 27–29.

Prisoners facing disciplinary proceedings are not entitled to the full panoply of rights due to a criminal defendant. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, prisoners are entitled to certain minimum procedural due process protections where serious rules violations are alleged, the sanctions to be applied implicate state statutes or regulations which narrowly restrict the power of prison officials to impose the sanctions, and the sanctions are severe. *Id*. at 556–57, 571–72 n.19. *Wolff* established five minimum procedural requirements. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Id*. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate

United States District Court
Northern District of California

to prepare for the appearance before the [disciplinary committee]." *Id.* Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566.

Here, Defendants provide evidence that the 30 days of custody credit assessed by Moore were later restored,[7] and it is unclear whether *Wolff*'s procedural protections are applicable. *See Frank v. Schultz*, 808 F.3d 762, 763–64 (9th Cir. 2015) (summary judgment properly granted to defendants on due process claim where prisoner filed a successful administrative appeal which led to the removal of the incident report from his file and the forfeited credits were restored). Even assuming that *Wolff*'s protections apply, however, the Court agrees with Defendants that no issues of material fact remain as to this claim, and that Defendants are entitled to summary judgment.

The only procedural protection at issue in King's complaint is his right to present witnesses and documentary evidence, *i.e.*, the fourth *Wolff* factor. It is undisputed that King was allowed to call two witnesses in support of his defense during his disciplinary hearing, and King conceded during his deposition that "Alvarez did not witness what happened between [King] and Defendant Tellez on February 7th, 2023." ECF No. 24 at 169. King's description of the interaction with Alvarez, in which King saw Alvarez several days after the incident, asked him whether he had ever seen King disrespect staff, and Alvarez allegedly answered in the negative, does not support a finding that Alvarez witnessed the February 7, 2023 incident, or that King did not call Tellez a "bitch." *See* ECF No. 24 at 168–71; *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) ("Mere allegation and speculation do not create a factual dispute for purposes of summary judgment.") (citation modified). Viewing the evidence in the light most favorable to King, he has not provided evidence showing that Moore's denial of his request to call Alvarez as a witness violated his right to due process. *Mack v. Lamarque*, 338 Fed. App'x 636, 637–38 (9th

---

[7] Neither party provides additional information about the circumstances surrounding restoration of King's custody credits.

United States District Court<br>Northern District of California

Cir. 2009) (affirming rejection of due process claim for failure to allow witnesses during disciplinary proceeding where plaintiff "failed to raise a genuine issue of material fact as to whether those witnesses would have provided any additional, relevant evidence."); *Bostic v. Carlson*, 884 F.2d 1267 (9th Cir. 1989) (exclusion of witness was not an error where information given by inmate about witness' testimony did not demonstrate how testimony would assist defense.); *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (exclusion of witness was not error where prisoner did not indicate how witness would have aided defense.); *Hudson v. Hedgepath*, 92 F.3d 748, 752 (8th Cir. 1996) (witness statement was unnecessary because it would not have provided defense.).

Moreover, while Moore denied King's request to present evidence of his prior RVRs on the basis that she was not there to "talk about past RVRs," Moore nevertheless documented King's statement that Tellez issued RVR No. 7270246 based on false allegations, and that Tellez had previously accused him of battery and King was found "Not Guilty" of the charge. ECF No. 24 at 64 (noting King's statements in disciplinary hearing report). "Prison officials must have the necessary discretion . . . to refuse to call witnesses [or accept evidence for reasons such as] irrelevance [or] lack of necessity." *Wolff*, 418 U.S. at 566. Without more, King fails to show an issue of material fact remains as to this claim, and fails to show that his due process rights were violated by Moore's denial of his request to present evidence of his prior RVRs. *See Oden v. Horel*, No. 09-cv-1172-JSW, 2009 WL 3367063, *2 (N.D. Cal. Oct. 19, 2009) ("Although Plaintiff complains that his own allegations regarding the complainant's motive in bringing charges were not credited, that is not sufficient to establish that a constitutional violation has occurred.")

Defendant's motion for summary judgment is **GRANTED** as to this claim.[8]

## IV.    CONCLUSION

The Court orders as follows:

---

[8] Defendants also argue that they are entitled to qualified immunity for King's due process claim. As the Court has determined that the claim fails on the merits, it need not discuss whether King's rights were clearly established at the time of the incident. *See Pearson*, 555 U.S. at 232.

1. The motion for summary judgment (ECF No. 24) is **PARTIALLY GRANTED**:

   a. The motion is **GRANTED** as to King's retaliation claim against Tellez related to RVR No. 7254672 and King's due process claim against Moore.

   b. The motion is **DENIED** as to the remaining retaliation claim against Tellez.

2. The retaliation claim against Tellez for RVR No. 7254672 is **DISMISSED WITHOUT PREJUDICE** to King challenging the RVR through habeas corpus in the appropriate venue, and without prejudice to King renewing his claims once he can show that the underlying RVR has been invalidated.

3. The retaliation claim against Moore is **DISMISSED WITH PREJUDICE**. As no further claims remain against Moore, she is **DISMISSED** from this lawsuit.

4. The Northern District of California has established a Pro Se Prisoner Settlement Program. Certain prisoner civil rights cases may be referred to a Magistrate Judge for a settlement conference. The Court finds that a referral is in order as to the remaining claim. Thus, this case is **REFERRED** to Magistrate Judge Robert M. Illman for a settlement conference. Judge Illman shall coordinate a time and date for the conference with all interested parties and/or their representatives and file with the Court a report of the result of the conference. The Clerk of the Court shall provide a copy of this Order to Judge Illman.

5. If this matter is not settled, then this case will proceed to trial.

**IT IS SO ORDERED.**

Dated: April 21, 2026

Noël Wise
United States District Judge